UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINIQUE PLAUNT, | ) | CIVIL ACTION NO. 1:24-CV-136 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| PERRY COUNTY CHILDREN AND | ) | |
| YOUTH SERVICES, *et al.*, | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Dominque Plaunt ("Plaintiff") initiated this civil action alleging that her civil rights were violated by Perry County Children and Youth Services, and its director Kristie Gantt. Both Defendants have filed motions to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Defendants ask, in the alternative, that two paragraphs of Plaintiff's complaint be struck if her complaint is permitted to proceed. Plaintiff filed a motion to strike Defendants' motions and briefs because they rely on facts contained in state court opinions and orders.

For the reasons discussed below, Defendants' motions to dismiss will be granted, but Plaintiff will be given leave to amend some of her claims. Defendants' request to strike two paragraphs of Plaintiff's complaint is denied as moot, and Plaintiff's motion to strike Defendants' motions and briefs will be denied.

However, the Court will not consider the exhibits Defendants provided to support their motions to dismiss.

## II.     BACKGROUND AND PROCEDURAL HISTORY

Before May 15, 2023 or June 10, 2023, Perry County Children and Youth Services ("CYS") received a report from one of Plaintiff's children alleging neglect and abuse. On May 15, 2023 or June 10, 2023, CYS, at the direction of Defendant Gantt, forcibly removed two of Plaintiff's minor children (ages 12 and 14) from her home. (Doc. 1, ¶ 17).[1] Plaintiff alleges that the report of abuse was unsubstantiated, and that she was entitled to, and did not receive, a hearing before her children were taken. (Doc. 1, ¶ 18).

Plaintiff also alleges that this incident attracted some unwelcome publicity, and that unnamed CYS officials disclosed confidential information about her and her children to local media outlets. She also alleges that unnamed CYS employees permitted third parties to be present during home visits, which further violated her privacy. Plaintiff does not allege whether these acts were undertaken pursuant to a policy or custom of CYS or its director and does not allege that Defendant Gantt directed her subordinates to engage in this conduct or was aware of and acquiesced

---

[1] Plaintiff alleges in her complaint that her children were taken into protective custody on June 10, 2023. In attached letters, she wrote that her children were taken into protective custody on May 15, 2023. (Docs. 1-2, p. 2, 1-2, p. 3).

in her subordinates' conduct of leaking information or allowing third parties to enter Plaintiff's residence.

On January 24, 2024, Plaintiff lodged a civil rights complaint against CYS and against Kristie Gantt, in her official capacity as the director of CYS.[2] Plaintiff also alleges in the body of her complaint that Defendant Gantt is "personally responsible" for denying her a pre-deprivation hearing. (Doc. 1, ¶ 19).

Plaintiff alleges that Defendants violated her right to due process because they removed Plaintiff's minor children from her home without prior notice or a hearing. (Doc. 1, ¶ 17). Plaintiff also alleges that her First Amendment right to privacy was violated because: (1) unnamed CYS employees disclosed confidential information about her case, including her identity, her children's identities, and the

---

[2] Plaintiff lists herself as the only Plaintiff in the caption of her complaint. In the body of her complaint, however, she suggests that she is brining this action on her own behalf and on behalf of her household. Plaintiff is proceeding *pro se* in this case and cannot represent others (including members of her household) in this civil rights action. 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct *their own* cases personally or by counsel . . . .") (emphasis added); *see also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Therefore, Plaintiff's complaint will be construed Plaintiff bringing claims on her own behalf only.

The complaint also originally listed "John Smith" as the director of CYS. (Doc. 1). The summons issued to John Smith was returned unexecuted because it was unknown who "John Smith" is. CYS clarified that its director is Kristie Gantt. (Doc. 9). On March 26, 2024, Plaintiff responded that she intended to name Kristie Gantt "in his official capacity as Director of Perry County Children and Youth Services." (Doc. 14). The Clerk of Court was directed to substitute Kristie Gantt for John Smith on the docket, and the complaint was served on Kristie Gantt. (Doc. 15).

nature of the abuse allegations to local media outlets, (Doc. 1, ¶ 20); and (2) unnamed CYS employees brought third parties to home visits at her residence that were not essential to the ongoing investigation. (Doc. 1, ¶ 22).[3]

Plaintiff appears to seek relief under the Administrative Procedures Act, 5 U.S.C. § 706 (Doc. 1, ¶ 26) (quoting language from the Administrative Procedures Act without citing the statute). She also requests compensatory damages, punitive damages, a "declaratory judgment that the actions of Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution," an "injunction requiring [CYS] to revise its policies and training to prevent future violations of this nature," "[r]easonable attorney's fees," and "[a]ny other relief that the Court deems just and appropriate under the circumstances." (Doc. 1, ¶¶ 25-30).

On March 1, 2024, Defendant CYS filed a motion to dismiss Plaintiff's complaint, and requests that in the event Plaintiff's complaint is not dismissed certain allegations be struck from her complaint. (Doc. 10). On June 17, 2024, Defendant Gantt filed a motion to dismiss Plaintiff's complaint, and requests that

---

[3] Plaintiff's complaint also includes a third claim, titled "supervisory liability" in which she alleges that Kristie Gantt is liable for the constitutional violations alleged because Defendant Gantt supervises CYS agents, and that she engaged in policies and practices (such as failing to correct her subordinates' actions) that were the moving force behind the violation of Plaintiff's constitutional rights. We will address this theory of liability in the context of Plaintiff's constitutional claims.

in the event Plaintiff's complaint is not dismissed certain allegations be struck from her complaint. (Doc. 24). On September 5, 2024, Plaintiff filed a motion requesting that Defendants' briefs be stricken. (Doc. 31). These motions have been fully briefed and are ready to resolve.[4]

## III.    LEGAL STANDARDS

### A.    RULE 12(B)(1): MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Under Rule 12(b)(1), a defendant may seek dismissal of a complaint based on a court's lack of subject matter jurisdiction.[5] "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'"[6] "If a District Court does not have subject matter jurisdiction, it must dismiss."[7]

When considering a Rule 12(b)(1) motion challenging subject matter jurisdiction, "[a] district court has to first determine . . . whether [the] motion

---

[4] It appears that Plaintiff is attempting to assert at least two additional claims in her briefs in opposition to Defendants' motions to dismiss. The Federal Rules of Civil Procedure do not provide for piecemeal amendment, and do not allow a litigant to supplement pleadings except in limited circumstances or with prior approval of the Court. Fed. R. Civ. P. 15. Plaintiff has neither properly amended her complaint nor sought the Court's approval to supplement her complaint. Allowing Plaintiff to file a partial amendment or supplement to her original pleading in a brief opposing dismissal presents an undue risk of piecemeal litigation that would greatly impede the orderly resolution of this case. We therefore decline to treat Plaintiff's briefs as an amendment or supplement to her complaint and will only consider the claims included in Plaintiff's complaint.

[5] Fed. R. Civ. P. 12(b)(1).

[6] *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

[7] *Berg v. Obama*, 586 F.3d 234, 242 and n.6 (3d Cir. 2009).

presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed."[8] As the Third Circuit explained in *Constitution Party of Pennsylvania v. Aichele*:

> A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present. Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint.[9]

On the other hand, a factual attack "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction."[10] When it reviews a factual attack, the court "may weigh and 'consider evidence outside the pleadings.'"[11] "A district court has 'substantial authority' to 'weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"[12] "[N]o presumptive truthfulness attaches to plaintiff's

---

[8] *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)).

[9] *Id.* at 358 (citing *Mortensen*, 549 F.2d at 891).

[10] *Id.*

[11] *Id.* (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), *holding modified by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003)).

[12] *Exel v. Govan*, No. 12-04280, 2013 WL 3146849, at *2 (D.N.J. June 18, 2013) (quoting *Mortensen*, 549 F.2d at 891).

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[13]

Courts generally treat pre-answer motions under 12(b)(1) as a facial challenge.

## B.    RULE 12(B)(6): MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Rule 8 of the Federal Rules of Civil Procedure explains that to state a claim, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."[14] This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[15] Thus, a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" is insufficient.[16]

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted."[17] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[18]

---

[13] *Id.*
[14] Fed. R. Civ. P. 8(a)(2).
[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).
[16] *Id.*
[17] Fed. R. Civ. P. 12(b)(6).
[18] *Iqbal*, 556 U.S. at 678.

Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] Plausibility does not require probability but the litigant must show "more than a sheer possibility that a defendant has acted unlawfully."[20] Facts "merely consistent with" liability do not satisfy this standard.[21]

At the motion to dismiss stage, the court accepts the complaint's factual allegations as true, but the court does not accept a plaintiff's legal conclusions.[22] In addition, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[23]

The federal pleading standard just described requires that district courts conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S.Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[23] *Id.* at 679.

relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*[ *v. Cty. Of Allegheny*, 515 F.3d 224, 234–35 (3d Cir. 2008)].[24]

## C.    *SUA SPONTE* DISMISSAL

Plaintiff is proceeding *in forma pauperis* in this case. Pursuant to 28 U.S.C. § 1915(e)(2), this Court has a statutory obligation to review Plaintiff's complaint and may dismiss claims *sua sponte* if a claim is: (1) frivolous or malicious, (2) seeks relief that cannot be granted, or (4) seeks money damages from a defendant who is immune from suit.[25] When conducting this screening analysis, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[26]

## D.    RULE 12(F): MOTION TO STRIKE A PLEADING

Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings. It provides that, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[27] "Content is immaterial when it has no essential or important relationship to the claim for relief. Content is impertinent when it does not pertain to the issues raised

---

[24] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

[25] 28 U.S.C. § 1915(e)(2).

[26] *See*, *e.g.*, *Endrikat v. Ransom*, No. 1:21-CV-1684, 2022 WL 4111861, at *2 (M.D. Pa. Sept. 8, 2022) ("In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

[27] Fed. R. Civ. P. 12(f).

in the complaint. Scandalous material improperly casts a derogatory light on someone, most typically on a party to the action."[28]

Rulings on motions to strike rest in the sound discretion of the court.[29] However, "striking a pleading or a portion of a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice.'"[30] Therefore, motions to strike pursuant to Rule 12(f) are generally disfavored "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."[31]  In practice, courts should exercise their discretion to strike a pleading only when the pleading is "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party.[32] "When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose

---

[28] *Champ v. USAA Casualty Insurance Company*, No. 5:20-CV-01238, 2020 WL 1694372, at *2 (E.D. Pa. 2020) (quoting *Lee v. Eddystone Fire & Ambulance*, No. 19-cv-3295, 2019 WL 6038535, at *2 (E.D. Pa. Nov. 13, 2019)) (quotation marks omitted).

[29] *Von Bulow v. Von Bulow*, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987) ("motions to strike portions of a complaint 'are addressed to the discretion of the [district] court.").

[30] *Lee v. Dubose Nat'l Energy Servs., Inc.*, No. 18-cv-2504, 2019 WL 1897164, at *4 (E.D. Pa. Apr. 29, 2019).

[31] *Natale v. Winthrop Res. Corp.*, No. 07-2686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (quoting *River Rd. Devel. Corp. v. Carlson Corp.*, No. 89-7037,1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)); *see also Eddystone Fire & Ambulance*, 2019 WL 6038535.

[32] *Ruby v. Davis Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001).

in promoting the just disposition of the litigation, courts generally deny such motions to strike."[33]

Unlike pleadings, briefs are by their nature argumentative and sometimes contentious filings. Generally, a brief will not be considered a "pleading" which is properly the subject of a motion to strike.[34]

## IV.    DISCUSSION

### A.    DOCUMENTS OUTSIDE THE PLEADINGS AND PLAINTIFF'S MOTION TO STRIKE

Defendants' submitted court opinions and orders with Defendant Gantt's brief that includes an alternative set of dates, as well as background information that is not included in Plaintiff's complaint. Both Defendants rely on information contained in these documents in their briefs. Plaintiff appears to oppose Defendants' reliance on these documents and the facts they contain in a motion to strike, in which she argues that the statements in these court opinions and orders are "unsworn" and that their use violates several federal statutes and guidelines

---

[33] *Cestra v. Mylan, Inc.*, No. 14-825, 2015 WL 2455420, at *7 (W.D. Pa. May 22, 2015) (quoting *Eisai Co. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 425 (D.N.J. 2009)).

[34] *Hrubec v. National R.R. Passenger Corp.*, 829 F.Supp. 1502, 1506 (N.D. Ill.,1993) (observing that objections to a magistrate judge's report and recommendation, a footnote in a memorandum, a motion to strike, and a party's supporting memorandum are not "pleadings" and therefore are not candidates for Rule 12(f)) (citing *Anna Ready Mix, Inc. v. N.E. Pierson Const. Co.*, 747 F.Supp. 1299, 1303 (S.D. Ill. 1990), and *Board of Education v. Admiral Heating and Ventilation, Inc.*, 94 F.R.D. 300, 304 (N.D. Ill. 1982)).

promulgated by the United States Office of Child Support Enforcement and the United States Department of Health and Human Services. (Docs. 31, 33).

Typically, a Court cannot consider documents outside the pleadings when ruling on a motion to dismiss. Defendant Gantt argues that the documents she submitted may be considered under an exception recognized by the Third Circuit in *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, which allows the Court to consider indisputably authentic documents that a plaintiff relied on when drafting the complaint.[35] We are not persuaded that the exception in *Pension Benefit Guar. Corp.* applies in this case because Plaintiff's claims are not "based on" the documents at issue. These court orders were issued after the alleged due process violation occurred and do not reference the alleged violation of Plaintiff's privacy.

Defendants also suggest that these documents can be considered without converting their motion to dismiss to a motion for summary judgment because they are "public records" that would be subject to judicial notice. They are correct that a court may properly consider matters susceptible to judicial notice when ruling on a motion to dismiss.[36] Relative to opinions and orders issued by other courts,

---

[35] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

[36] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also* Fed. R. Evid. 201 ("[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial

however, we may take judicial notice of the *existence* of the order or opinion but cannot take notice of the facts they contain for their truth.[37] Defendants clearly request that we take notice of these opinions and orders for the truth of the facts they contain. We therefore cannot take judicial notice of the facts Defendants rely on.

Having decided that we cannot consider Defendants' exhibits when ruling on a motion to dismiss, we must next decide whether to convert Defendants' motions to summary judgment motions. When presented with extrinsic documents not properly considered on a motion to dismiss, the Court may of course simply disregard them; otherwise, it may convert a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment under Rule 56. Notably, "[t]he decision whether to convert a motion to dismiss into a [motion for summary judgment] . . . is a discretionary one."[38]

In this case we find that converting Defendants' motions to motions for summary judgment would needlessly delay and complicate this case. First, Defendants did not submit a statement of material facts with their motion or brief.[39] The Court would be inclined to request that Defendants submit statements of

---

jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

[37] *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410 (3d Cir. 1999).

[38] *United States v. Est. of Elson*, 421 F. Supp. 3d 1, 5 (D.N.J. 2019).

[39] *See* L.R. 56.1.

material facts, and that Plaintiff submit a response, before converting Defendants'
motions. This would prolong the resolution of Defendants' motions. Second,
Defendants' motion did not clearly notify Plaintiff of the potential for conversion.
Thus, the Court would be required to both notify Plaintiff of its intent to convert
the motion and provide her an opportunity to supplement her response. This would
also prolong the resolution of Defendants' motions. Finally, the documents in
question are relevant to the resolution of only one of Plaintiff's claims—her denial
of a pre-deprivation hearing claim. There is little likelihood that converting
Defendants' motion would fully resolve this case, and Plaintiff would be entitled to
amend some of the remaining claims that are subject to dismissal under Rule
12(b)(6).

Therefore, we decline to convert Defendants' motions to dismiss to motions
for summary judgment at this time because it would needlessly delay and
complicate the resolution of this matter. We will resolve these motions to dismiss
without considering the court orders and opinions Defendants provided, or the
facts those orders and opinions contain.

Although we will decline to consider certain facts contained in Defendants'
motions and briefs, we decline to strike the motions or briefs themselves. Striking
documents from the record is a disfavored practice, and courts use their authority
to do so sparingly and under circumstances where the offending document will

result in some prejudice to the party requesting it be struck. Plaintiff has failed to offer any reason why the continued presence of Defendants' motions and briefs on the docket would result in prejudice to her. Accordingly, Plaintiff's motion to strike Defendants' motions and briefs (Doc. 31) will be denied.

**B.    PLAINTIFF'S REQUEST FOR RELIEF UNDER THE ADMINISTRATIVE PROCEDURES ACT**

Under the heading "prayer for relief," Plaintiff writes that she requests:

Judicial Review: To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.

And –

(1)    Compel agency action unlawfully withheld or unreasonably delayed; and

(2)    Hold unlawful and set aside agency action, findings, and conclusions found to be—

(A)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)    contrary to constitutional right, power, privilege, or immunity;

(C)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D)    without observance of procedure required by law;

(E)    unsupported by substantial evidence

or

(F)    unwarranted by the facts

(Doc. 1, ¶ 24).

This language appears to be taken from a section of the Administrative Procedures Act, 5 U.S.C. § 706 ("APA"). Under the APA, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[40] As used in the APA, the term "agency" means "each authority of the Government of the United States."[41] The APA is not applicable to state agencies.[42]

To the extent Plaintiff intends to assert a claim under the APA, it has not been adequately pleaded. Furthermore, the two named Defendants, CYS and Defendant Gantt, are not federal agencies. CYS is a state agency, and Defendant Gantt is the director of a state agency. The APA is not applicable to these Defendants because they are not federal agencies.

Accordingly, Plaintiff's request for relief under the APA will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). She will not be afforded leave to amend this claim for relief as it would be futile; the APA is not applicable to any Defendant named in Plaintiff's complaint.

---

[40] 5 U.S.C. § 702; *see also John v. Pennsylvania Dep't of Hum. Servs.*, No. 5:24-CV-0781, 2024 WL 3204474, at *4 (E.D. Pa. June 26, 2024).

[41] 5 U.S.C. § 551(1); 5 U.S.C. § 701(b)(1).

[42] *Johnson v. Guhl*, 166 F. Supp. 2d 42 (D.N.J. 2001), *aff'd*, 357 F.3d 403 (3d Cir. 2004), *as amended* (Mar. 26, 2004); *John*, 2024 WL 3204474, at *6 (E.D. Pa. June 26, 2024).

C.    DEFENDANTS' MOTIONS TO DISMISS: LACK OF SUBJECT MATTER
JURISDICTION

CYS argues that the Court lacks jurisdiction over all of Plaintiff's claims against it because it is immune under the Eleventh Amendment. Similarly, Defendant Gantt argues that the Court lacks jurisdiction over Plaintiff's claims against her in her official capacity because she is immune under the Eleventh Amendment. In response, Plaintiff argues that her claims "against the state officials fall squarely within the jurisdiction established by *Ex parte Young*," because she "alleges that state officials infringed upon her constitutional rights, including her right to familial association and due process, which necessitates federal judicial intervention." (Doc. 23, pp. 2-3); (Doc. 29, pp. 2-3).

A 12(b)(1) motion is the proper mechanism for raising the issue of whether the Eleventh Amendment to the United States Constitution bars the exercise of federal court jurisdiction.[43] The Eleventh Amendment bars lawsuits against states in federal court.[44] This immunity extends to state agencies. Similarly, lawsuits filed against state officers in their official capacity should be treated as lawsuits against the state.[45] Therefore, a claim in a lawsuit against an agency of the Commonwealth or a Commonwealth officer in their official capacity is treated as a lawsuit against

---

[43] *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)).
[44] U.S. Const. amend XI.
[45] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

the Commonwealth of Pennsylvania for the purposes of Eleventh Amendment immunity.

CYS is an agency of the Commonwealth.[46] Therefore, Eleventh Amendment immunity is applicable to CYS. Plaintiff alleges that Defendant Gantt is the Director of CYS, and thus is an officer of the Commonwealth. Plaintiff has sued Defendant Gantt in her official capacity. Therefore, Eleventh Amendment immunity is applicable to all claims brought against Defendant Gantt in her official capacity because she is an officer of the Commonwealth. Unless an exception applies, Plaintiff's claims against CYS and her official capacity claims against Defendant Gantt are barred by the Eleventh Amendment.

Eleventh Amendment immunity is subject to three exceptions: "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers [in their official capacity] for prospective injunctive and declaratory relief to end an ongoing violation of federal law."[47]

---

[46] *Al Hadidi v. Jones*, No. 4:22-CV-00861, 2022 WL 21757151, at *4 (M.D. Pa. June 7, 2022) (explaining that "Pennsylvania's domestic relations agencies, such as [Northumberland County] Children and Youth Services, are defined by statute as arms of the state courts and institutions of state government" and that Eleventh Amendment immunity applied to Northumberland County CYS), *report and recommendation adopted sub nom. Hadidi v. Jones*, No. 4:22-CV-00861, 2022 WL 21757149 (M.D. Pa. Aug. 11, 2022).

[47] *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).

Congress has not abrogated Eleventh Amendment immunity in enacting 42 U.S.C. § 1983, and the Commonwealth of Pennsylvania has not waived its immunity from suit for § 1983 claims. The first two exceptions to Eleventh Amendment immunity, therefore, do not apply in this case.

The third exception, as articulated in *Ex Parte Young*, 209 U.S. 123 (1908), applies to suits brought against individual officers in their official capacity, and allows a plaintiff to bring suit where the relief sought is a prospective injunction or prospective declaratory relief. This exception, therefore, only applies to claims against state officers sued in their official capacity, and where the plaintiff alleges an ongoing violation of federal law.

CYS is a state agency, not a state officer. Therefore, the third exception to Eleventh Amendment immunity does not apply to CYS. Accordingly, all of Plaintiff's claims against CYS will be dismissed for lack of subject matter jurisdiction because they are barred by the Eleventh Amendment.

As to Defendant Gantt, Plaintiff seeks damages, including compensatory damages, punitive damages, costs, and attorney fees. These types of relief are not injunctive or declaratory. Therefore, we will dismiss Plaintiff's claims seeking compensatory damages, punitive damages, costs, and attorney fees from Defendant Gantt in her official capacity for lack of subject matter jurisdiction because this relief is barred by the Eleventh Amendment.

Regarding Plaintiff's claims for injunctive and declaratory relief, Defendant Gantt is a state officer sued in her official capacity. However, Plaintiff does not allege an ongoing violation of federal law. Instead, she alleges that: (1) Defendant Gantt violated her rights when Defendant Gantt ordered others to take her children on May 14, 2023 without providing Plaintiff with a hearing on or before that date; (2) an unnamed CYS employee gave confidential information about Plaintiff to media outlets *in the past*; and (3) an unnamed CYS employee allowed third parties into Plaintiff's house during *past* home visits. She requests the following equitable relief: (1) "declaratory judgment that the actions of Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution," (Doc. 1, ¶ 27), and (2) "[a]n injunction requiring CPS to revise their policies and training to prevent future violations of this nature" (Doc. 1, ¶ 28). Thus, while Plaintiff seeks declaratory and injunctive relief, her complaint is based entirely on *past* conduct. She does not allege facts from which the Court might infer that the conduct at issue (failing to provide Plaintiff a pre-deprivation hearing in May 2023, providing confidential information to local media outlets in the past, or bringing third parties to past home visits) has continued, or is anticipated to continue, indicating an ongoing violation of federal law.[48]

---

[48] *Harr v. Buczak*, No. CV 21-1555, 2024 WL 4064139, at *5 (W.D. Pa. Sept. 5, 2024) (citing *Suring v. South River Bd. of Educ.*, No. 20-2804, 2022 WL 264464, at *3 (3d Cir. Jan. 27, 2022) (holding that the *Ex Parte Young* exception

Therefore, we will dismiss Plaintiff's claims seeking declaratory and injunctive relief from Defendant Gantt in her official capacity for lack of subject matter jurisdiction because they are barred by the Eleventh Amendment.

Plaintiff's claims against CYS and Defendant Gantt in her official capacity will be dismissed without leave to amend. Amendment of the claims against CYS and Defendant Gantt would be futile because they are immune from suit under the Eleventh Amendment.

### D. DEFENDANT GANTT'S MOTION TO DISMISS: FAILURE TO STATE A CLAIM

To the extent Plaintiff intended to assert a claim against Defendant Gantt in her personal capacity, Defendant Gantt argues that Plaintiff's constitutional claims should be dismissed because (1) Plaintiff does not allege facts that show Defendant Gantt was personally involved in the constitutional violations alleged; (2) Plaintiff did not plead plausible violations of her constitutional rights; and (3) Defendant Gantt is absolutely immune from Plaintiff's claim for damages.

---

did not apply to that case because, even though the injunctive relief plaintiff sought was phrased in prospective terms, there were not facts alleged indicating that the purported violations of constitutional rights were ongoing); *Taylor v. City of Jersey City*, No. 22-457, 2023 WL 6997250, at *4 (D.N.J. Oct. 24, 2023) (dismissing claims as barred by the Eleventh Amendment where the plaintiff failed to allege specific facts from which the court might infer that the alleged civil rights violations were ongoing); *see also Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (observing that it is not proper to assume Plaintiff can prove facts that she has not alleged or that Defendants have violated the law in ways Plaintiff has not alleged).

In response, Plaintiff alleges she adequately alleged Defendant Gantt's personal involvement because her complaint includes "allegations of Defendant Gantt's direct involvement and supervisory role, making her complicit in the violations of Plaintiff's rights." (Doc. 29, p. 4). She also argues that she pleaded plausible constitutional claims, and that Defendant Gantt is not entitled to absolute immunity because it "applies only to specific functions closely associated with the judicial process, not to all actions taken by child welfare workers." (Doc. 29, p. 5).

### 1.    Plaintiff's Claims alleging Violations of her Privacy

Plaintiff asserts claims that her constitutional rights were violated. These claims are brought pursuant to 28 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States."[49] "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'"[50] For a state actor to be liable under § 1983, that actor must subject or cause Plaintiff to be subjected to the deprivation of a right, privilege, or immunity secured by the Constitution and laws of the United States.[51] For

---

[49] *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).

[50] *Williams v. Pennsylvania Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 104 (3d Cir. 2014)).

[51] 42 U.S.C. § 1983.

individual actors, like Defendant Gantt, subjecting, or causing someone to be subjected to an act, is usually referred to as "personal involvement." It is well-settled that liability under § 1983 is personal in nature, and that to be held responsible an individual defendant in a § 1983 action must have personal involvement in the alleged wrongdoing. One way of establishing personal involvement at the pleading stage is through allegations that the defendant directly participated in the alleged wrongdoing.

In some cases, plaintiffs allege that a supervisor is liable for constitutional violations committed by that supervisor's subordinates. This concept is sometimes referred to as "supervisory liability." Liability under § 1983, however, cannot be predicated solely on the operation of *respondeat superior*."[52] When addressing supervisory liability in 2009, the United States Supreme Court wrote that, "[i]n a § 1983 suit . . . where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[53] Thus, to the extent the concept of supervisory liability survives in § 1983 cases after *Iqbal*, the scope of that liability is narrowly defined. As the Third Circuit Court of Appeals has observed:

---

[52] *Iqbal*, 556 U.S. at 676.
[53] *Iqbal*, 556 U.S. at 677.

> "There are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations."[54]

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts in her complaint that demonstrate the supervisor's personal involvement.[55]

Regarding the allegations of Defendant Gantt's personal involvement in the violation of Plaintiff's personal privacy, Plaintiff's suggests in her complaint that Defendant Gantt was responsible for "policies and practices" that were the moving force behind the violation of Plaintiff's constitutional rights. (Doc. 1, ¶¶ 23-26).

Plaintiff's vague allegation that Defendant Gantt enforced policies and allowed others to engage in practices that were the "moving force" behind the violations of her rights are insufficient to show that Defendant Gantt was personally involved in disclosing information to local media outlets or bringing third parties to Plaintiff's residence during home visits. To state a claim, a complaint must include more than a recitation of the elements of a cause of action. Plaintiff's allegations regarding her "policy or practice" theory of liability are limited to the elements to establish liability and do not include any factual basis

---

[54] *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004)).

[55] *Jetter v. Beard*, 183 F. App'x 178, 181 (3d Cir. 2006).

from which we could reasonably infer Defendant Gantt was involved in the misconduct alleged. Plaintiff does not identify any actual policy or practice that led to the alleged violation of her privacy. Accordingly, she has not adequately pleaded Defendant Gantt's personal involvement based on a "policy or practice" theory for any of her claims. She similarly does not allege facts that suggest Defendant Gantt directed her subordinates to engage in the conduct at issue or knew and acquiesced in their actions.

Accordingly, Plaintiff's § 1983 claims against Defendant Gantt regarding the disclosure of Plaintiff's personal information to media outlets, and bringing third parties into Plaintiff's home for inspections, will be dismissed because she did not allege facts demonstrating Defendant Gantt's personal involvement.

In one of her briefs, Plaintiff requests that she be granted an opportunity to file an amended complaint. If a complaint is subject to dismissal for failure to state a claim, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile."[56] Given her vague allegations concerning the nature of her privacy violation claims, we cannot say with certainty that amendment of the constitutional claims brought against Defendant Gantt in her individual capacity would be futile. Therefore, Plaintiff will be granted the opportunity to amend these claims.

---

[56] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

### 2.      Plaintiff's Claim That She Was Denied a Pre-Deprivation Hearing

Defendant Gantt argues that Plaintiff fails to plead a plausible procedural due process claim regarding the denial of a pre-deprivation hearing. (Doc. 25, pp. 9-10) (incorporating Doc. 11, pp. 6-8). In response, Plaintiff argues that she has pleaded a plausible due process claim because she was not given a pre-deprivation hearing. (Doc. 23, pp. 2-3, 4-5); (Doc. 29, p. 7).

Like her privacy claims, Plaintiff's due process claim alleging the denial of a pre-deprivation hearing is brought under § 1983. To state a § 1983 alleging the denial of one's right to procedural due process, "a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide 'due process of law.'"[57] "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."[58]

> The Third Circuit has recognized that there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Miller v. City of Philadelphia*, 174 F.3d 368, 373 (3d. Cir. 1999). However, "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children." *Croft v. Westmoreland Cty. Children and Youth Servs.*, 103 F.3d 1123, 1125 (3d. 1997). "This interest, however, must be balanced against the state's interest in protecting children suspected of being

---

[57] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).
[58] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

abused." *Miller*, 174 F.3d at 373 (3d. Cir. 1999). "The right to familial integrity, in other words, does not include a right to remain free from child abuse investigations." *Croft*, 103 F.3d at 1125 (3d. 1997).[59]

As other courts have observed in the context of child abuse investigations, "[d]ue Process is flexible and calls for such procedural protections as the particular situation demands."[60] The Third Circuit has held that "[i]initiating child custody proceedings by *ex parte* orders is generally constitutional if a prompt post-deprivation hearing is held."[61] It has also held that a county's failure to provide the parents of a child with a pre-deprivation hearing before taking a child into protective custody did not amount to a violation of procedural due process where a post-deprivation hearing was held within 72-hours.[62]

Here, Plaintiff alleges that she was not given a pre-deprivation hearing before Defendant Gantt ordered that her children be taken into protective custody. She does not, however, allege sufficient facts for the Court to determine whether her due process claim is plausible because she does not allege what, if any, post-deprivation process she received. Therefore, she has failed to plead a procedural due process claim upon which relief can be granted.

---

[59] *Smith v. Northampton Cty.*, No. CV 22-3788, 2023 WL 1767765, at *7 (E.D. Pa. Feb. 3, 2023).

[60] *Id.* at *8 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

[61] *Dennis v. Dejong*, 557 F. App'x 112, 117 (3d Cir. 2014) (citing *Miller*, 174 F.3d at 372 n. 4).

[62] *Id.*

Moreover, as Defendants argue, Defendant Gantt is immune from Plaintiff's individual capacity claim against her for damages arising out of this conduct. CYS caseworkers like Defendant Gantt may be cloaked in two forms of immunity from civil liability for damages claims: (1) absolute immunity; or (2) qualified immunity.

"[P]ublic policy considerations supporting absolute immunity for prosecutors are equally applicable to child welfare workers acting in a quasi-prosecutorial capacity in dependency proceedings."[63] Because child welfare workers exercise discretion in deciding whether to bring a child dependency proceeding, their judgment would be compromised if the workers faced the threat of personal liability for mistakes. [64]

The Third Circuit has explained:

In the absence of absolute immunity, we would expect suits in retaliation for the initiation of dependency proceedings to occur with even greater frequency than suits against prosecutors. Parents involved in seemingly unjustified dependency proceedings are likely to be even more resentful of state interference in the usually sacrosanct parent-child relationship than are defendants of criminal prosecution. In turn, the likely frequency of such suits would result in a significant diversion of the energies of child welfare workers away from their official duties to the defense of § 1983 litigation. Further, defending against § 1983 actions would likely be as difficult for child welfare workers as it would be for prosecutors because child welfare workers, like prosecutors, must make quick decisions on the basis of

---

[63] *Ernst v. Child and Youth Services of Chester Cty.*, 108 F.3d 486, 496 (3d Cir. 1997).

[64] *Id.*

limited information. Defending these decisions, often years after they are made, could impose unique and intolerable burdens on child welfare workers responsible annually for hundreds of dependency and child abuse cases.[65]

This immunity, however, has limits. It does not insulate from liability all actions taken by child welfare employees.[66] To determine whether absolute immunity applies, the Court must ascertain what conduct forms the basis of the plaintiff's causes of action, and then determine what function that act served and the role the actor occupied when carrying it out. *Id.*

A CYS employee's conduct may also be shielded by qualified immunity. Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[67] To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1)

---

[65] *Id.* at 496-97 (cleaned up).

[66] *B.S. v. Somerset Cty.*, 704 F.3d 250, 270 (3d Cir. 2013) (citing *Ernst*, 108 F.3d at 497 n.7) ("[W]e would be unwilling to accord absolute immunity to investigating or administrative actions taken by child welfare workers outside the context of a judicial proceeding.").

[67] *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

whether the official violated a constitutional right and, if so, (2) whether the right was clearly established.[68]

The conduct that forms the basis of Plaintiff's due process claim against Defendant Gantt in her individual capacity is a direction she gave to unidentified CYS staff members to remove Plaintiff's children from her custody on May 14, 2023. Defendant Gantt's role was as a child welfare worker, and her act of directing subordinate employees to take Plaintiff's children into protective custody was based on the exercise of her judgment after receiving a report of potential child abuse and neglect and prompted Defendant Gantt to initiate a dependency proceeding. The exercise of this type of professional judgment by a CYS employee is comparable to a criminal prosecutor's decision to initiate a criminal proceeding. Defendant Gantt's conduct of directing her subordinates to take children into protective custody following a report of potential abuse and neglect served a function that was quasi-prosecutorial in nature and is an integral part of the judicial process in a dependency proceeding. Thus, like a prosecutor who has absolute immunity from damages claims arising out of the decision to initiate a criminal prosecution, Defendant Gantt has absolute immunity from liability for Plaintiff's damages claim arising out of her decision to respond to a report of suspected abuse

---

[68] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

or neglect by taking the children into protective custody and initiating a dependency proceeding. Accordingly, even if this due process claim was plausible, Plaintiff would not be able to seek damages from Defendant Gantt arising out of this conduct because Defendant Gantt is absolutely immune.

As we discussed above, the Court is required to grant Plaintiff leave to amend her civil rights claim unless amendment is inequitable or futile. Plaintiff will be granted leave to amend her procedural due process claim seeking injunctive or declaratory relief against Defendant Gantt in her individual capacity only. Allowing amendment of Plaintiff's damages claim against Defendant Gantt in her individual capacity would be futile because Defendant Gantt is absolutely immune.

### E. LEAVE TO AMEND, AND DEFENDANTS' REQUESTS TO STRIKE PARAGRAPHS 14 AND 16 OF PLAINTIFF'S COMPLAINT

If a civil rights complaint, like the one Plaintiff filed in this case, is subject to dismissal for failure to state a claim, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile."[69] As we have explained, amendment of several of the claims Plaintiff asserts in her complaint would be futile.

For the reasons we explained in this memorandum opinion, Plaintiff **will not** be given leave to amend the following claims: (1) her claim for relief under the APA; (2) the § 1983 claims alleging denial of a pre-deprivation hearing and

---

[69] *Phillips*, 515 F.3d at 245.

privacy violations brought against CYS; (3) the § 1983 claims alleging denial of a pre-deprivation hearing and privacy violations brought against Defendant Gantt in her <u>official capacity</u>; and (4) Plaintiff's request for money damages against Defendant Gantt in her <u>individual capacity</u> for the denial of a pre-deprivation hearing.

Plaintiff may amend all other claims.

Regarding Defendants' requests to strike paragraphs 14 and 16 of Plaintiff's complaint, because we have recommended dismissal of the original complaint their request is now moot. Plaintiff, however, should exclude her allegations about Defendants' insurance coverage from her amended complaint.

## V.    CONCLUSION

Accordingly, it will be ordered that Plaintiff's motion to strike (Doc. 31) be denied, and that Defendants' motions to dismiss (Docs. 10 and 24) be granted as follows:

(1)    The following claims will be dismissed with prejudice:

  a.    Plaintiff's claim for relief under the APA;

  b.    Plaintiff's § 1983 claims alleging denial of a pre-deprivation hearing and privacy violations brought against CYS;

  c.    Plaintiff's § 1983 claims alleging denial of a pre-deprivation hearing and privacy violations brought against Defendant Gantt in her <u>official capacity</u>; and

      d.     Plaintiff's request for money damages against Defendant Gantt in her <u>individual capacity</u> for the denial of a pre-deprivation hearing.

(2)     Plaintiff's remaining claims will be dismissed without prejudice, and with leave to amend. Plaintiff may file an amended complaint on or before **July 2, 2025**. If no amended complaint is received by this deadline, this case may be dismissed in its entirety and closed.

(3)     Defendants' requests to strike paragraphs 14 and 16 of Plaintiff's complaint will be denied as moot. However, Plaintiff is instructed to exclude the allegations about Defendants' insurance coverage from her amended complaint.

Date: June 4, 2025                BY THE COURT

                                      <u>*s/William I. Arbuckle*</u>
                                      William I. Arbuckle
                                      U.S. Magistrate Judge