# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOMINIQUE PLAUNT,** | : | **CIV. NO. 1:24-CV-00136** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **PERRY COUNTY CHILDREN AND** | : | |
| **YOUTH SERVICES, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.    Factual Background and Procedural History

This case was reassigned to the undersigned on June 27, 2025, after the *pro se* plaintiff, Dominique Plaunt, filed an amended complaint. (Doc. 36). At that time Plaunt's claims were all previously found to be legally deficient and were dismissed by the Court, but she was granted narrow leave to amend her complaint as to some of her claims. (Docs. 34, 35). In her amended complaint, Plaunt goes beyond the scope authorized by the Court and alleges that Perry County Children and Youth Services (CYS) and its director, Kristie Gantt, along with unknown CYS agents and collaborating law enforcement officers, violated her Fourth and Fourteenth Amendment rights, as well as state law, by forcibly removing her two minor children from her custody without a warrant or judicial order and without exigent

1

circumstances justifying such action. (Doc. 36, ¶ 10). Plaunt alleges she confronted the agents and officers and demanded legal justification for the removal of her children, but none was produced. (Id., ¶ 11). She claims the removals were based upon uncorroborated statements of her children, which were later recanted, and occurred absent any immediate or verified danger to the children. (Id., ¶ 12). According to Plaunt, a verbal order allegedly authorizing emergency custody was issued after the children were already seized and CYS failed to provide a pre-deprivation hearing and delayed the post-deprivation hearing for several days. (Id., ¶¶ 13-14). She states that she acted lawfully in protecting herself from aggression by her children and alleges that, had due process been followed, CYS would have concluded her conduct was justified and non-abusive.[1]

Plaunt claims that the actions of CYS and Gantt violated her Fourth Amendment right to be free from unlawful seizure, Fourteenth Amendment procedural and substantive due process rights, several Pennsylvania statutes, and an executive order issued by HHS. (Id., ¶¶ 19-39). As a result of this allegedly unlawful seizure of her children, Plaunt avers she and her children have suffered tremendous trauma, emotional distress, and reputational harm. (Id., ¶ 18). She requests declarative and injunctive relief, restraining the defendants from further

---

[1] She purports to have an email from the District Attorney's Office indicating the same. (Id., ¶ 16).

2

unconstitutional seizures or detention of minors, as well as compensatory and punitive damages.

On June 4, 2025, the Court dismissed Plaunt's original complaint. The Court concluded Plaunt's claims against CYS were barred by the Eleventh Amendment and dismissed them with prejudice. Similarly, the Court dismissed the claims against Defendant Gantt in her official capacity, as well as her request for money damages against Defendant Gannt in her individual capacity with prejudice. (Doc. 35). The Court also dismissed any claim for relief under the Administrative Procedure Act (APA) with prejudice. (Id.) The plaintiff was granted leave to amend with respect to her remaining claims against Defendant Gantt in her individual capacity, to the extent that they only sought injunctive relief. (Id.)  Thus, our consideration of the plaintiff's amended complaint is confined by the Court's prior order which limited the claims Plaunt was granted leave to assert in her amended complaint.

The plaintiff filed her amended complaint on June 27, 2025. (Doc. 36). On August 11, 2025, after being granted an extension of time to file their response,[2] the defendants filed a motion to dismiss the plaintiff's amended complaint and accompanying brief. (Docs. 38, 39, 40, 41). The motion is now fully briefed and ripe

---

[2] Since the defendants were granted an extension of time to respond to the plaintiff's amended complaint, her claim that the defendants' motion to dismiss is untimely fails.

for resolution. For the reasons set forth below, the defendants' motion will be granted.

## II.   Discussion

### A. Motion to Dismiss—Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, BU.S.B, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light

4

most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather,

in conducting a review of the adequacy of a complaint, the Supreme Court has
advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain
more than mere legal labels and conclusions; it must recite factual allegations
sufficient to raise the plaintiff's claimed right to relief beyond the level of mere
speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for
overcoming a motion to dismiss and refined this approach in Iqbal. The

plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u> <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess the sufficiency of Plaunt's claims.

**B. <u>The Plaintiff's Amended Complaint Will Be Dismissed.</u>**

**1. <u>The Law of the Case Doctrine Compels Dismissal of CYS.</u>**

At the outset, Plaunt's amended complaint appears to attempt to re-litigate a matter that has previously been conclusively resolved by this Court. Specifically, the amended complaint names Perry County Children and Youth Services as a defendant

even though that defendant was previously dismissed by the district court with prejudice. Thus, the amended complaint, in essence, invites the Court to re-litigate its prior dismissal order as it relates to this defendant.

We should decline this invitation since, with respect to CYS, the plaintiff's amended complaint runs afoul of the law of the case doctrine.

"Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. . . . The purpose of this doctrine is to promote the 'judicial system's interest in finality and in efficient administration.'" Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1981) (quoting Todd & Co., Inc. v. S.E.C., 637 F.2d 154, 156 (3d Cir. 1980)). The contours of this doctrine have been described by the courts in the following terms: In Arizona v. California, 460 U.S. 605 (1983), the Supreme Court noted:

> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

Id. at 618 (citations omitted).

The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit' " In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir. 2009) (reversing arbitration order in antitrust case on law-of-

the-case grounds) (citations omitted). It is clear that "[t]he . . . doctrine does not restrict a court's power but rather governs its exercise of discretion." Id. (quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc., 123 F.3d 111, 116 (3d Cir. 1997)) (citations omitted). In exercising that discretion, however, courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." Id. (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)). In addition to that narrow class of cases where the prior ruling was manifestly unjust, the type of "extraordinary circumstances" that warrant a court's exercising its discretion in favor of reconsidering an issue decided earlier in the course of litigation typically exist only where (1) new evidence is available, or (2) a supervening new law has been announced. Id. (citing Pub. Interest Research Group of N.J., Inc., 123 F.3d at 117).

Presently, the law of the case is that CYS has been dismissed from this lawsuit with prejudice. Therefore, in order to overcome the law of the case, Plaint must demonstrate that reinstatement of her claims against this defendant is justified based upon extraordinary circumstances. To meet this burden, she must allege new evidence, a supervening change in the law, or a need to prevent a manifest injustice. Plaint's amended complaint alleges none of these extraordinary circumstances.

In fact, as the Court previously explained in dismissing all claims against Perry County CYS with prejudice, these claims are barred by the Eleventh Amendment to the United States Constitution which provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. Although the text of the Amendment seems only to restrict the Article III diversity jurisdiction of federal courts, the United States Supreme Court has explained that it has "understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996) (quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 779 (1991) ). What that "presupposition" means is two-fold: "first, that each State is a sovereign entity in our federal system; and second, that [i]t is inherent in the nature of sovereignty not to be amendable to the suit of an individual without its consent." Id. (quoting Hans v. Louisiana, 134 U.S. 1, 13 (1890)) (internal quotations omitted).

Pennsylvania has not consented to be sued in federal court. See 42 Pa. Cons. Stat. Ann. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); see also 1

Pa. Cons. Stat. Ann. § 2310 (under Pennsylvania law, the Commonwealth enjoys sovereign immunity unless the General Assembly "specifically waives sovereign immunity."); Pa. Const. art. I, § 11 (providing that the Commonwealth may be sued only "in such manner, in such courts and in such cases as the Legislature may by law direct."). Although the Commonwealth has expressly waived its sovereign immunity from suit in state court in nine specific areas, it has not waived its immunity from being sued in federal court for any reason. See 42 Pa. Cons. Stat. Ann. § 8521(b); Chittister v. Dep't of Community and Economic Development, 226 F.3d 223, 227 (3d Cir. 2000) (noting that the Commonwealth "has waived immunity only for certain specified tort claims in suits for damages in state court," while at the same time has emphasized that nothing in the waiver statute shall be construed to waive immunity from suit in Federal courts). Accordingly, the Third Circuit Court of Appeals has long made clear that Pennsylvania has not consented to be sued in federal court. See id.; Wheeling & Lake Erie Ry. v. Public Util. Comm'n, 141 F.3d 88, 91 (3d Cir. 1998); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981).

In this case, CYS is an arm of the Commonwealth of Pennsylvania, and the Third Circuit Court of Appeals has held that "Pennsylvania's domestic relations agencies, such as Children and Youth Services, are defined by statute as arms of the state courts and institutions of state government," and thus subject to immunity under the Eleventh Amendment. Wattie-Bey v. Attorney General's Office, 424 F.

App'x 95, 98 and n.2 (3d Cir. 2011); see also Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. Mar. 22, 2009); Van Tassel v. Lawrence County Domestic Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Therefore, as previously concluded by the Court in dismissing these claims against this defendant with prejudice, Perry County CYS is immune from liability. Accordingly, all claims against this defendant will, again, be dismissed with prejudice.

### 2. The Plaintiff Has Not Alleged the Personal Involvement of Defendant Gantt

Plaunt's claims against Defendant Gantt also fail to state a claim upon which relief can be granted. At the outset, Plaunt alleges her claims of constitutional liability pursuant to 42 U.S.C. § 1983. It is axiomatic that in order to be liable under § 1983, a defendant "must have had personal involvement in the alleged wrongdoing." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Such personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence. Rode, 845 F.2d at 1207. These allegations, however, must be pleaded and proven with sufficient particularity. Id. Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegation of personal direction or of actual knowledge and

acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

The amended complaint, while it names Defendant Gantt as director of Perry County CYS, does not allege any act by Defendant Gantt in the removal of her children. Thus, in our view, Plaunt attempts once again to impute liability upon Defendant Gantt simply by virtue of her position as Director of CYS. This she may not do.

Quite the contrary, to state a constitutional tort claim against a supervisory defendant, the plaintiff must show that the supervisory defendant actively deprived her of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). In fact, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004). Rather, "[p]ersonal involvement must be

alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006).

Here, while Defendant Gantt is named as Director of CYS, the amended complaint states only generally that the "defendants removed Plaintiff's children without lawful justification," (Doc. 36, ₱ 31), but does not state what actions, if any, were committed by Defendant Gantt. The amended complaint also does not allege the removal of her children was directly ordered by Defendant Gantt, or that Gantt was aware of their removal. Thus, Plaunt's complaint does not clear the threshold requirement of asserting a constitutional claim under § 1983, since she does not allege personal involvement on behalf of the only remaining defendant, Defendant Gantt.

### 3. The Defendants Are Entitled To Immunity

Moreover, even assuming the plaintiff can impute liability upon Gantt, this Court's prior conclusion that Defendant Gantt, as Director of Perry County CYS, is entitled to immunity apply equally to the claims in her amended complaint and compel dismissal.[3] At the outset, to the extent that Plaunt wishes to hold Defendant

---

[3] The plaintiff's amended complaint also names as defendants "unknown C.A.Y.S. agents and collaborating law enforcement officers." We do not address these unknown defendants separately but incorporate her claims against these unknown

Gantt liable for her part in ordering the emergency removal of her children from her custody, federal and Pennsylvania state law provide broad protection and immunities to child welfare workers, particularly in child abuse investigations and dependency proceedings. In fact, the Third Circuit has joined a cascade of other circuits in holding that the duties performed by child welfare workers in dependency proceedings are so closely analogous to those performed by prosecutors that they too are entitled to absolute immunity from liability. As the Third Circuit explained:

> CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings. Their immunity is broad enough to include the formulation and presentation of recommendations to the court in the course of such proceedings. We reach this conclusion because (1) the functions performed by the CYS defendants in dependency proceedings are closely analogous to the functions performed by prosecutors in criminal proceedings; (2) the public policy considerations that countenance immunity for prosecutors are applicable to child welfare workers performing these functions; and (3) dependency proceedings incorporate important safeguards that protect citizens from unconstitutional actions by child welfare workers.

Ernst v. Child & Youth Servs. of Chester Cnty., 108 F.3d 486, 495 (3d Cir. 1997) (citing Milspaugh v. County Dep't of Pub. Welfare of Wabash County, 937 F.2d 1172, 1176 (7th Cir. 1991); Vosburg v. Department of Soc. Servs., 884 F.2d 133, 135

---

defendants in our analysis and conclude that Plaunt's claims fail to state a claim against any defendant.

16

(4th Cir. 1989); <u>Salyer v. Patrick</u>, 874 F. 2d 374, 378 (6th Cir. 1989); <u>Meyers v. Contra Costa County Dep't. of Soc. Servs.</u>, 812 F.2d 1154, 1156 (9th Cir. 1987)).

Moreover, to the extent Plaunt argues Gantt and the other CYS officials allegedly unconstitutional acts were committed outside the confines of their dependency proceedings duties, although the Third Circuit has applied absolute immunity to child welfare workers only so far as their involvement in dependency proceedings, state actors in their official capacity are also entitled to qualified immunity in certain circumstances. The doctrine of qualified immunity shields governmental officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Mullenix v. Luna</u>, 577 U.S. 7, 11 (2015). The qualified immunity inquiry has two parts. The first asks whether the plaintiff has alleged sufficient facts to "make out a violation of a constitutional right." <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009). The second question is "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." <u>Id.</u> (internal quotation marks omitted). A court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." <u>Pearson</u>, 555 U.S. at 236, 129 S.Ct. 808.

Here, the plaintiff has not alleged sufficient facts to make out a violation of a constitutional right. In fact, Plaunt's claims that Defendant Gantt and any unnamed CYS case workers violated her constitutional rights are belied by the official state court records confirming that a verbal order for emergency protective custody authorized the removal of Plaunt's children from her home. (Doc. 24-1).[4] The written confirmation of the verbal order, in turn, recites what Plaunt seemingly acknowledges in her amended complaint, that CYS officials and the Court acted on statements from her children that she was abusing them in seeking their removal

---

[4] The Court previously declined to consider the Confirmation of Verbal Order for Emergency Protective Custody the defendants attached to their motion to dismiss the plaintiff's original complaint but granted the motion, nonetheless. In our view, the contents of this attachment fall squarely within the type of undeniably authentic materials upon which the court may rely at this stage since it directly undercuts the basis of the plaintiff's entire complaint, that CYS removed her children from her home without a court order. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (the court may consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents"); Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered"); U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). Therefore, we find that this order, whose authenticity has never been disputed, entirely undercuts the factual lynchpin of Plaunt's case, her assertion that the children were removed from her home without court authorization.

from her home.[5] On this factual finding, the Perry County Juvenile Court issued a verbal order on May 14th, 2023, granting an order of protective custody and authorizing CYS and/or any duly authorized law enforcement officer to take the children into custody. (Id.)

On this score, in Fourth Amendment cases involving the removal of a child from a parent's custody, courts in this circuit have "analogized the situation of a childcare worker who seeks, obtains and executes a temporary custody order to a police officer seeking, obtaining and executing an arrest warrant." Studli v. Child. & Youth And Fams. Cent. Reg'l Off., 346 F. App'x 804, 809–10 (3d Cir. 2009) (quoting Callahan v. Lancaster–Lebanon Intermediate Unit 13, 880 F.Supp. 319, 334 (E.D.Pa.1994)) (internal quotations removed). Thus, the Third Circuit has confirmed:

> "[It] is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant that meets the requirements of the Fourth Amendment." The only exception is where "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." It is only when this exception applies that the "shield of immunity" would be lifted.

---

[5] Specifically, it was reported that Plaunt had padlocked them in their bedrooms for at least three days with only a bucket for toileting purposes, that one child sustained bite marks to her body, and that Plaunt refused to allow CYS inside her home to investigate. (Id.)

Id. (quoting Callahan, 880 F.Supp. at 334). Here, although the plaintiff argues the defendants removed her children from her home before the order was issued, the written confirmation of the verbal order contradicts this claim and indicates the CYS officials were acting on a verbal order of the juvenile court based upon evidence of abuse reported by Plaunt's children.

On this score, the plaintiff alleges that on or about May 14, 2023, her children were forcibly removed from her custody without a warrant, judicial order, or exigent circumstances. This statement alleged by the plaintiff provides the basis for her entire claim. Yet the undisputedly authentic document presented by the defendants confirms that a verbal order was issued by the Juvenile Court of Perry County on May 14th, 2023, granting CYS's application for a court order of protective custody. Thus, absent any claims of fraud or bad faith on the part of those seeking the protective order, which the plaintiff does not allege, the case workers and Defendant Gantt cannot be liable for conduct ordered by the juvenile court. See Studli, 346 F. App'x at 810.

Similarly, as to her due process claims generally, it is well established that, there is no constitutionally protected right to be free from child abuse investigations and "[t]he Third Circuit has recognized the delicate nature of these situations and has explained that as a general rule, mere negligence of a social worker is insufficient to constitute a violation of substantive due process rights." Starkey v. York Cnty.,

No. 1:11-CV-00981, 2012 WL 9509712, at *6 (M.D. Pa. Dec. 20, 2012) (citing

Miller v. City of Phila., 174 F.3d 368, 376-77 (3d Cir. 1999)). Nonetheless, here, it

is clear no violation occurred. As the court previously recognized, the Third Circuit

has held that "[i]initiating child custody proceedings by ex parte orders is generally

constitutional if a prompt postdeprivation hearing is held." Dennis v. Dejong, 557 F.

App'x 112, 117 (3d Cir. 2014) (citing Miller v. City of Phila., 174 F.3d 368, 372 n.4

(3d Cir. 1999)). It has also held that a county's failure to provide the parents of a

child with a pre-deprivation hearing before taking a child into protective custody did

not amount to a violation of procedural due process where a post-deprivation hearing

was held within 72-hours. Id. The plaintiff acknowledges that a post-deprivation

hearing was held but states without specificity that it was not held for "several days."

(Doc. 36, ₱ 14). Nonetheless, court records show the post-deprivation hearing was

scheduled for May 16th, 2023, within 72 hours after the children were removed from

her home. (Doc. 24-1). Thus, this claim is also factually bankrupt when viewed in

light of the state court record.

Finally, even disregarding the verbal order issued by the juvenile court

authorizing the removal of the children from Plaunt's home, it is undisputed that the

removal was based upon statements from Plaunt's own children that they were being

abused. Therefore, any underlying substantive due process claim Plaunt alleges fails

since, in cases involving the violation of the familial right to privacy, courts again

focus on a similar standard to probable cause. Thus, "[o]ur focus . . . is whether the information available to the defendants at the time would have created an objectively reasonable suspicion of abuse justifying the degree of interference with the [plaintiff's] rights as [a] parent." Croft v. Westmoreland Cnty. Child. & Youth Servs., 103 F.3d 1123, 1126 (3d Cir. 1997). Here, CYS was acting on statements from Plaunt's own children that they were being abused; statements which she does not deny.[6] This is enough to satisfy the reasonable suspicion benchmark, especially when coupled with the fact that, as discussed above, Plaunt did receive the procedures due to her in the child abuse investigation.[7]

On these facts, where it is evident that the defendants acted pursuant to a court order in a fashion consistent with settled caselaw, based upon what was reported to be an exigent need to protect children from abuse, none of the defendants could have

─────────────────────

[6] Indeed, like the standard for probable cause, the since the focus is on what child welfare workers knew at the time the children were removed from the home, the Third Circuit has contemplated "cases in which a child services bureau may be justified in removing either a child or parent from the home, even where later investigation proves no abuse occurred." Croft, 103 F.3d at 1126. Thus, even accepting as true the allegation in the amended complaint that Plaunt's children later recanted their statements, reasonable suspicion still existed at the time the children were removed since the case workers were acting on reports of abuse from the children themselves.

[7] Moreover, the court records indicate that, after adjudication of the petition to remove the children, the court concluded clear and convincing evidence existed to substantiate the allegations and the children were ordered removed from Plaunt's home. (Doc. 24-1, at 21-22).

reasonably understood that their actions transgressed clearly established law. Thus, the plaintiff's constitutional claims fail, and the defendants are entitled to qualified immunity.

### 4. **The Plaintiff's Remaining Claims Fail on the Merits**

In addition to her constitutional claims brought under § 1983, Plaunt also alleges violations of two state statutes and a federal executive order. These claims fail because there is no private right of action to enforce the state laws or federal order she cites. At the outset, although the plaintiff's amended complaint has couched her APA claims, which were previously dismissed with prejudice by the Court, as now seeking enforcement of a 2023 HHS executive order, her claim still fails for the same reasons previously cited, since neither CYS nor Defendant Gantt are federal agencies which would be subject to the purview of this executive order, and the APA is not applicable to state agencies. See Doc. 34, at 16 (citing Johnson v. Guhl, 166 F. Supp. 2d 42 (D.N.J. 2001), aff'd, 357 F.3d 403 (3d Cir. 2004), as amended (Mar. 26, 2004); John v. Pennsylvania Dep't of Hum. Servs., No. 5:24-CV-0781, 2024 WL 3204474, at *6 (E.D. Pa. June 26, 2024)). Moreover, the Third Circuit has confirmed that there is simply no private right of action to enforce executive orders. Facchiano Const. Co. v. U.S. Dep't of Lab., 987 F.2d 206, 210 (3d Cir. 1993) ("Generally, there is no private right of action to enforce obligations imposed on executive branch officials by executive orders").

As to the state statutes Plaunt cites, 23 Pa.C.S. § 6302(c) and 18 Pa.C.S. § 509(1), it appears she requests this federal court find the defendants liable for violating Pennsylvania law. But, under Pennsylvania law, state courts are typically extremely reluctant to imply a cause of action for damages from a state statute in the absence of some specific expressed intent by the legislature to permit such a cause of action. Rather, it is well-settled that: "The violation of a statute and the fact that some person suffered harm does not automatically give rise to a private cause of action in favor of the injured person. This court will not engraft a private cause of action onto the statute without further guidance from the General Assembly." Estate of Witthoeft v. Kiskaddon, 557 Pa. 340, 348, 733 A.2d 623, 627 (1999). See Alfred M. Lutheran Distributors, Inc. v. A.P. Weilersbacher, Inc., 437 Pa. Super. 391, 650 A.2d 83 (1994). Since no such legislative intent to allow damages claims has been expressed by the General Assembly, we should not gratuitously engraft such a cause of action upon these statutes, and this claim fails as a matter of law.

### 5.  The Plaintiff's Claims for Injunctive Relief Are Barred.

Finally, having found the defendants immune from any claims for damages against them, to the extent that Plaunt seeks sweeping injunctive relief in the form of the federal court "restraining Defendants from further unconstitutional seizures or detention of minor(s)," (Doc. 36, at 9), Plaunt's complaint runs afoul of several insurmountable obstacles.

24

At the outset, as this Court previously concluded, Plaunt may not seek injunctive relief for past conduct. See Doc. 34, at 20 (citing Harr v. Buczak, No. CV 21-1555, 2024 WL 4064139, at *5 (W.D. Pa. Sept. 5, 2024); Taylor v. City of Jersey City, No. 22-457, 2023 WL 6997250, at *4 (D.N.J. Oct. 24, 2023); Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983)). Thus, to the extent she seeks some sort of redress in injunctive form for the May 14, 2023, removal of her children from her custody, this type of relief simply is not available. Moreover, her current demand to restrain Perry County CYS from "further unconstitutional seizures or detention of minor(s)" is simply too broad and speculative to warrant the type of equitable relief the plaintiff demands. See City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S. Ct. 1660, 1670, 75 L. Ed. 2d 675 (1983) (The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a "likelihood of substantial and immediate irreparable injury").

Furthermore, this complaint, which necessarily invites us to review, re-examine and deem unconstitutional state court orders, encounters a threshold legal obstacle. As we have explained in the past:

> [W]e lack subject matter jurisdiction over the[se] issues . . . , which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker–Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir.2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker–Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP, 449 F.3d 542, 547 (3d Cir.2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker–Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic

> Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521–22; see
> also Lance v. Dennis, 546 U.S. 459, ——, 126 S.Ct. 1198,
> 1201, 163 L.Ed.2d 1059 (2006).
>
> Id.
>
> However, even within these narrowly drawn confines, it has been
> consistently recognized that the Rooker–Feldman doctrine prevents
> federal judges from considering civil rights lawsuits which seek to re-
> examine state domestic relations court rulings that are presented "by
> state-court losers complaining of injuries caused by state-court
> judgments rendered before the district court proceedings commenced."
> Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir.2007). In such
> instances, the federal courts have typically deferred to the state court
> domestic relations decisions, and rebuffed efforts to use federal civil
> rights laws to review, or reverse, those state court rulings. See, e.g.,
> Marran v. Marran, 376 F.3d 143 (3d Cir.2004); Kwasnik 228 F. App'x
> 238, 242; Smith v. Department of Human Services, 198 F. App'x 227
> (3d Cir.2006); Van Tassel v. Lawrence County Domestic Relations
> Section, 659 F.Supp.2d 672, 690 (W.D.Pa.2009) aff'd sub nom. Van
> Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x
> 201 (3d Cir.2010) (Rooker–Feldman doctrine operates as a
> jurisdictional bar to plaintiff's claims if the injuries of which she
> complains were caused by a state court judgment or ruling which was
> entered against her); Buchanan v. Gay, 491 F.Supp.2d 483, 487
> (D.Del.2007); Rose v. County of York, No. 05–5820, 2007 WL 136682
> (E.D.Pa. Jan.12, 2007); Logan v. Lillie, 965 F.Supp. 695, 696
> (E.D.Pa.1997) aff'd, 142 F.3d 428 (3d Cir.1998); Behr v. Snider, 900
> F.Supp. 719, 721 (E.D.Pa.1995).

Rose v. York Cnty., No. 1:13-CV-2056, 2013 WL 4456220, at *3–4 (M.D. Pa. Aug. 1, 2013), report and recommendation adopted, No. 1:13-CV-2056, 2013 WL 4434748 (M.D. Pa. Aug. 16, 2013). These jurisdictional and jurisprudential considerations weigh against granting sweeping injunctive relief at the outset of this

litigation, since that relief would necessarily imply the invalidity of at least some state court orders.

Further, to the extent that this complaint invites this Court to enjoin future enforcement of state court orders in a pending domestic relations case, this *pro se* pleading runs afoul of another settled tenet of federal law, the <u>Younger</u> abstention doctrine. The <u>Younger</u> abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "<u>Younger</u> abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." <u>Kendall v. Russell</u>, 572 F.3d 126, 130 (3d Cir. 2009) (citing <u>Younger v. Harris</u>, 401 U.S. 37, 41 (1971) ("[W]e have concluded that the judgment of the District Court, enjoining appellant <u>Younger</u> from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances")).

This doctrine, which is informed by principles of comity, is guided by these same principles in its application. The Supreme Court has recently narrowed the scope of <u>Younger</u>, employing courts first to determine whether the parallel state action falls within one of "three exceptional categories" which trigger <u>Younger</u> abstention: (1) criminal prosecutions, (2) "certain civil enforcement proceedings,"

and (3) "civil proceedings involving certain orders uniquely in furtherance of the state court's ability to perform their judicial functions." Harmon v. Dep't of Fin., 811 Fed. Appx. 156, 157 (3d Cir. 2020) (citing Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 79, 134 S. Ct. 584, 592, 187 L. Ed. 2d 505 (2013)).

Once it is established the parallel action falls within a category to which Younger applies, courts are directed to consider three additional factors[8] in determining whether abstention is appropriate. Malhan v. Sec'y United States Dep't of State, 938 F.3d 453, 456 (3d Cir. 2019). As the United States Court of Appeals for the Third Circuit has observed:

> Abstention under Younger is appropriate only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. See Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); Kentucky West Virginia Gas Co., 791 F.2d at 1116. Even if the necessary three predicates exist, however, Younger abstention is not appropriate if the federal plaintiff can establish that (1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted. See Middlesex, 457 U.S. at 435, 102 S.Ct. at 2523; Younger, 401 U.S. at 49–50, 53–54, 91 S.Ct. at 753, 755.

Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)

---

[8] These factors were established by the Supreme Court in Middlesex County Ethics Comm. v. Garden State Bar Assn., 457 U.S. 423, 433-434 (1982) and are referred to as Middlesex factors.

Once these three legal requirements for <u>Younger</u> abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with ongoing state cases. <u>Id.</u>; <u>Zahl v. Harper</u>, 282 F.3d 204 (3d Cir. 2002). Indeed, the Court of Appeals has expressly applied <u>Younger</u> abstention to state court domestic relations litigation, holding that: "This is precisely the type of case suited to <u>Younger</u> abstention, as the state proceeding implicates the important state interest of preserving the state's judicial system." <u>Lazaridis v. Wehmer</u>, 591 F.3d 666, 671 (3d Cir. 2010).

In this case, the plaintiff's amended complaint reveals that all of the legal prerequisites for <u>Younger</u> abstention are present. First, it is evident that there were state proceedings in this case in the form of child custody proceedings in the juvenile court of Perry County. It is also apparent that those proceedings afford the plaintiffs a full and fair opportunity to litigate the issues raised in this lawsuit in these state cases. <u>See Sullivan v. Linebaugh</u>, 362 F. App'x 248, 249–50 (3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, since the state case involves domestic relations matters, an issue of paramount importance to the

state. See Lazaridis, 591 F.3d at 671. Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. However, given the important state interest in enforcement of its domestic relations rulings and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention.

In sum, all of the plaintiff's claims fail on the merits, the defendants are immune from liability for damages, and Plaunt's requests for injunctive relief are barred. Accordingly, the defendants' motion to dismiss, (Doc. 40), is GRANTED. Moreover, while the Court's initial analysis called for dismissal of this action, the Court provided Plaunt an opportunity to further litigate this matter by endeavoring to promptly file a proper amended complaint since in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). However, at this juncture, having concluded that this *pro se* amended complaint is still flawed in multiple and profound ways which cannot be remedied by more artful pleading, the plaintiff's amended complaint will now be dismissed with prejudice and the case will be closed.

An appropriate order follows.

_S/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

DATED: November 18, 2025